IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

**Case No. 02-61709-CIV-Marra/Seltzer**

WENCELAS DOUZABLE,                    :
                                      :
                    Plaintiff,        :
                                      :
v.                                    :
                                      :
AUTONATION USA CORPORATION            :
and PINKERTON'S, INC.,                :
                                      :
                    Defendants.  :
_____/

**NIGHT BOX FILED**

AUG 1 5 2003

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

# DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY ACTION AND SUPPORTING MEMORANDUM

Defendants AutoNation USA Corporation ("AutoNation") and Pinkerton's, Inc. ("Pinkerton" or the "Company"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* move to compel arbitration in this matter pursuant to the arbitration agreement signed by plaintiff Wencelas Douzable ("Douzable"). Defendants also move to dismiss this action or, in the alternative, to stay the suit pending the arbitration.

## I. INTRODUCTION

This Court should compel arbitration of this dispute pursuant to the strong federal policy in favor of arbitration set forth in the Federal Arbitration Act ("FAA" or the "Act"). Former Pinkerton employee Douzable agreed, at the time of his hiring, to submit

**AKERMAN SENTERFITT**

25

all employment disputes to binding arbitration.  Pinkerton and AutoNation timely

demanded arbitration as to the employment discrimination claims asserted in this

action, and this Court should enforce that demand.

**Douzable has agreed to arbitrate his claims against Pinkerton, but he**

**has refused to arbitrate his claims against AutoNation.**  This Court should direct

Douzable to arbitrate all of his claims.


## II.  FACTUAL BACKGROUND

1.      Pinkerton hired plaintiff Douzable in December 2000.  *See* Amended

Complaint ¶ 18.

2.      In connection with his hiring, Douzable received the Pinkerton Security

Officer Associate Handbook, including the Company's Arbitration Program description.

Douzable signed an Acknowledgement form and an Applicant Agreement (collectively,

the "Agreement") acknowledging his receipt of these documents and "agree[ing] to be

bound by" them.  A copy of the Agreement is attached as Exhibit A.  A copy of the

Program description is attached as Exhibit B.

3.      Also in December 2000, Pinkerton assigned Douzable to work as a

security guard at a facility where AutoNation maintained an office.  *See* Amended

**AKERMAN SENTERFITT**

Complaint ¶ 19.  Plaintiff alleged that AutoNation and Pinkerton were his "joint employers."[1] Id.

4.      In early 2001, allegedly at AutoNation's request, Pinkerton transferred Douzable from his position at the AutoNation facility to a similar security guard position elsewhere.  *See* Amended Complaint ¶¶ 21-23.

5.      Last year, Douzable filed this suit against AutoNation alleging discrimination claims under federal and state law in connection with his employment at the AutoNation facility.  The Complaint was not served on AutoNation until April 2003.

6.      Recently, Douzable amended his pleading to include similar claims against Pinkerton.  In July 2003, Pinkerton was served with the Amended Complaint.  Soon thereafter, Defendants demanded arbitration pursuant to the Agreement.  *See* Letter dated July 22, 2003 (attached as Exhibit C).[2]

7.      In the Agreement, Douzable acknowledged that **"PINKERTON AND ITS EMPLOYEES ARE SUBJECT TO A MANDATORY ARBITRATION PROGRAM TO THE EXTENT ALLOWED BY LAW."**  Ex. A (emphasis in original).

---

[1]     AutoNation disputes the "joint employer" claim and notes that Douzable's Agreement states in relevant part:  "I understand and agree that Pinkerton retains the sole right to modify my compensation and benefits, position, duties, and other terms and conditions of employment, including the right to impose discipline of whatever type and for whatever reasons Pinkerton, at its sole discretion, determines to be appropriate."  Ex. A.

[2]     In response to the Amended Complaint, AutoNation asserted, as its first defense, that "Douzable's claims are subject to binding arbitration."  AutoNation's Amended Answer at 1.

**AKERMAN SENTERFITT**

8.     The scope of the Pinkerton Arbitration Program is quite broad, governing virtually all employment claims (except for workers compensation claims) and specifically covering Title VII discrimination claims.  *See* Ex. B at 9.  The Program includes any claims that Douzable "may have against the Company or against its officers, directors, **associates or agents** in their capacity as such."  Id. (emphasis added).

9.     Douzable recently agreed to arbitrate his claims against Pinkerton but rejected AutoNation's demand for arbitration.[3]

# III.  DISCUSSION

This Court should direct Douzable to submit his claims to arbitration in accordance with the mandatory arbitration provision in the Agreement and with the "liberal federal policy favoring arbitration agreements."  Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000); *accord* Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1057 (11th Cir. 1998) (noting the "general federal policy in favor of arbitration").  The Agreement fully covers the discrimination claims asserted by Douzable in this suit.  And as the Eleventh Circuit has found, such statutory claims are not exempt from the presumption favoring arbitration.  *See* Brown v. ITT Consumer Fin.

---

[3]     Counsel for Douzable informed defense counsel in a recent phone conversation that her client would agree to arbitrate his claims against Pinkerton but not those against AutoNation.

**AKERMAN SENTERFITT**

Corp., 211 F.3d 1217, 1221 (11th Cir. 2000) ("This circuit has held that statutory claims,

including Title VII claims, can be subject to mandatory arbitration.").

Douzable does not dispute that he agreed to be bound by the Agreement.

Nor does he challenge the validity of the Company's Agreement and Arbitration

Program. Indeed, Douzable consented to arbitrate his claims against Pinkerton. His

only objection to this motion concerns the AutoNation claims. Douzable mistakenly

contends that he is not required to arbitrate those claims because AutoNation is not a

signatory to the Agreement.

Douzable cannot have it both ways. He cannot, on the one hand, sue

AutoNation as his "joint employer" and, on the other hand, argue that AutoNation is not

his employer for purposes of his arbitration obligations. Douzable is estopped from

denying his obligation to arbitrate the AutoNation claims. Further, AutoNation, as an

intended third-party beneficiary of the Agreement, may compel arbitration thereunder.


**A.      Both Federal and Florida Courts Allow Non-Signatories, Such as AutoNation, to Invoke Arbitration Provisions in Certain Circumstances That Exist in This Case.**

In this case, the "lack of a written arbitration agreement is not an

impediment to arbitration." MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th

Cir. 1999). As the Eleventh Circuit noted in MS Dealer, there are certain exceptions

"that allow nonsignatories to a contract to compel arbitration." Id. Two such exceptions

– equitable estoppel and "agency or related principles" – are present in this situation.

Id.; *see also* <u>Long v. Silver</u>, 248 F.3d 309, 320 (4th Cir.) ("A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract.") (reversing order denying motion to compel arbitration), *cert. denied*, 534 U.S. 894 (2001).

The essential inquiry, therefore, is whether under applicable state law – Florida law – AutoNation has the right to enforce the Agreement signed by its alleged employee.  Florida courts (like federal courts) construe arbitration agreements liberally, generally finding in favor of arbitration.  *See* <u>Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc.</u>, 778 So. 2d 1089, 1090 (Fla. 4th DCA 2001) ("Arbitration is a preferred method of dispute resolution; therefore, any doubt regarding the scope of an arbitration clause should be resolved in favor of arbitration."); <u>Ocwen Fin. Corp. v. Holman</u>, 769 So. 2d 481, 483 (Fla. 4th DCA 2000) ("Arbitration clauses are to be given the broadest possible interpretation in order to accomplish the purpose of resolving controversies outside of the courts.").

Applying this principle, Florida courts (again like federal courts) have found that non-signatory agents and third-party beneficiaries, such as AutoNation, may enforce and be bound by arbitration agreements.  *See* <u>Henderson v. Idowu</u>, 828 So. 2d 451, 452 (Fla. 4th DCA 2002) ("Notwithstanding appellant is a non-signatory to the arbitration agreement, she is entitled to its benefits [because] she is a third party beneficiary."); <u>Martha A. Gottfried</u>, 778 So. 2d at 1090 ("Non-signatories may be bound by an arbitration agreement if dictated by ordinary principles of contract law and agency.

Furthermore, a third-party beneficiary to a contract can be compelled to arbitrate.")
(citations omitted).

Pursuant to these basic contract principles, the Court should compel
Douzable to arbitrate his claims against AutoNation.

## B.     Douzable Is Estopped from Objecting to AutoNation's Arbitration Demand.

Douzable is estopped from arguing that AutoNation – his alleged "joint
employer" – may not invoke the Agreement that he signed agreeing to arbitrate all of his
employment claims.

Douzable asserts the **same claims** based on the **same events** against
both AutoNation and Pinkerton.  Further, he alleges that the two defendants acted
together as his "joint employer."  Amended Complaint ¶ 19.  The Eleventh Circuit has
found that where claims against a signatory and non-signatory are thus intertwined –
where the claims "are based on the same facts and are inherently inseparable" – a court
should refer all the related claims to arbitration "even though [one defendant] is not
formally a party to the arbitration agreement."  Sunkist Soft Drinks, Inc. v. Sunkist
Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993) (citation omitted).

"[A]pplication of equitable estoppel is warranted" in our situation where
Douzable "raises allegations of . . . substantially interdependent and concerted
misconduct by both the nonsignatory and one or more of the signatories to the
[arbitration] contract."  MS Dealer, 177 F.3d at 947 (citation omitted).  "Otherwise, the

arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." Id. (internal quotation marks omitted).

This Court should not allow Douzable to thwart the strong federal policy in favor of arbitration by dividing his "inherently inseparable" claims against his alleged "joint employers."  The Court should compel the arbitration of all of his claims.

**C.**    **As a Third-Party Beneficiary, AutoNation May Invoke the Agreement's Arbitration Provision.**

In addition, arbitration is warranted because AutoNation is a third-party beneficiary of the Agreement and its arbitration provision.

The purpose of the Agreement was to ensure that any claims that might arise during Douzable's employment with Pinkerton would be arbitrated.  The Agreement extends not only to the Company but also to its employees, associates and agents.  It is disingenuous of Douzable to claim that AutoNation and Pinkerton are his "joint employers" and yet argue that AutoNation is outside the scope of this provision.  Either AutoNation is not Douzable's employer and, therefore, is not a proper defendant in this case – as Defendants maintain.  Or AutoNation "employed" Douzable and thus acted as an agent or associate of Pinkerton and thus was an intended beneficiary of the Agreement.  See Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 640 (11th Cir. 1990) ("In order for one to qualify as a third-party beneficiary under a contract, it must

AKERMAN SENTERFITT

be shown that the intent and purpose of the contracting parties was to confer a direct and substantial benefit upon the third party.").

The close relationship between Pinkerton and AutoNation brings AutoNation within the scope of the Agreement and requires the arbitration of this entire dispute. *See* <u>MS Dealer</u>, 177 F.3d at 947 ("[T]he relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.") (internal quotation marks omitted); *see also* <u>Arnold v. Arnold Corp.</u>, 920 F.2d 1269, 1281 (6th Cir. 1990) (approving court's order compelling arbitration of claims against both signatory and non-signatory defendants and stating that a plaintiff should not be able to "avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint").

Following these decisions and following the directives of the Act, this Court should compel the arbitration of this dispute and should dismiss this suit.

## IV.  CONCLUSION

For these reasons, Defendants ask that the Court compel arbitration and dismiss this action.  Alternatively, Defendants request that the Court stay this suit pending the arbitration.

**AKERMAN SENTERFITT**

Case No. 02-61709-CIV-Marra

Respectfully submitted,

AKERMAN SENTERFITT
Counsel for Defendants
2800 SunTrust International Center
One S.E. Third Avenue
Miami, Florida  33131
Telephone:   305-374-5600
Telefax:        305-374-5095
E-Mail:  NCopperthwaite@akerman.com


Nancy A. Copperthwaite
Florida Bar No. 549428


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 15th day of August 2003 to:  Beth M. Gordon, Esq., Parrillo, Weiss & O'Halloran, 2101 N.W. Corporate Boulevard, Suite 104, Boca Raton, Florida  33431; and Richard A. Ivers, Esq., Navon, Kopelman & Lavin, P.A., 2699 Stirling Road, Suite B-100, Fort Lauderdale, Florida  33312.


Nancy A. Copperthwaite

AKERMAN SENTERFITT

EXHIBIT A

08/29/01  WED 13:18 FAX 954 491 1017        BURNS INTL SECURITY SERV                    ☒007



**ASSOCIATE ACKNOWLEDGMENTS**
**(Please sign where indicated)**

## HANDBOOK ACKNOWLEDGMENT – NON-UNION

I have received a copy of the Pinkerton Security Officer Associate Handbook; which includes Pinkerton's Code of Business Ethics and Arbitration Program.

I understand that the policies in this associate handbook shall govern the terms and conditions of my employment unless expressly modified in writing by the Company. I understand it is my responsibility to read and comply with all of the policies and terms in this associate handbook and agree to be bound by them. Accordingly, I understand that any violation of the policies and terms in this associate handbook may be grounds for discipline and possibly termination of employment.

_Wenceslas Douzable_
Associate Name (Print)

_Wdouzable_
Associate Signature

_12-01-00_
Date

---

## At-Will Statement - IMPORTANT NOTICE:  READ THIS CAREFULLY

I understand that throughout my employment with Pinkerton's Inc., either the Company or I may terminate my employment at any time, with or without notice or with or without cause.

_Wenceslas Douzable_
Associate Name (Print)

_Wdouzable_
Associate Signature

_12-01-00_
Date

---

## HANDBOOK ACKNOWLEDGMENT- UNION

I have received a copy of the Pinkerton Security Officer Associate Handbook; which includes Pinkerton's Code of Business Ethics.

I understand that the policies in this associate handbook shall govern the terms and conditions of my employment unless expressly modified in writing by the company. I understand it is my responsibility to read and comply with all of the policies and terms in this associate handbook and agree to be bound by them. Accordingly, I understand that any violation of the policies and terms in this associate handbook may be grounds for discipline and possibly termination of employment.

Associate Name (Print)                    Associate Signature

Date

---

## HANDBOOK  EXCEPTIONS – SEPARABILITY OF PROVISIONS

Pinkerton has recognized specific Union organizations as the sole and exclusive bargaining representative for identified locations. Collective Bargaining Agreements ("CBA") and/or Customer Service Agreements exist which may in some respect be in conflict with this Handbook. The CBA and the Customer Service Agreement shall be the controlling document when conflicting language or procedures are identified. Pinkerton's policy has always been that non-represented associates are afforded the same benefits as those associates working at a represented site under the same Service Agreement. In the event that any of the provisions of this Handbook are, or become, invalid or unenforceable, by reason of the Collective Bargaining Agreements, federal or state law, regulation or court decision, the remaining unaffected provisions shall remain in full force and effect.

08/29/01  WED 13:17 FAX 954 491 1017        BURNS INTL SECURITY SERV                    004

# EDUCATION

| NAME | ADDRESS | CURRICULUM / MAJOR | GRADE POINT AVERAGE | UNITS COMPLETED | DEGREE / DIPLOMA / CERTIFICATE EARNED |
|------|---------|---------------------|----------------------|------------------|----------------------------------------|
| High School or GED | Haitian - Canadian H. S | Secondary | 3.9 | 7 yrs | H.S Diploma |
| College / University | | | | | |
| Trade / Vocational | | | | | |
| Business / Other | | | | | |
| List any scholarships, academic honors or special achievements: | | | | | |

VOLUNTARY INFORMATION - LIST EXTRA CURRICULAR ACTIVITIES, HOBBIES, ETC. (omit those indicating race, color, creed, religion, sex, sexual orientation, national origin, age, marital status, physical disability, medical condition, veteran status or other protected groups): Ny city volunteer
school Program

## APPLICANT AGREEMENT

*Please read the following statement carefully before signing this application. Only applications that are signed and dated are considered valid.*

I hereby certify that I have personally completed this application, that the information contained in it is true, complete and correct to the best of my knowledge and that I have not knowingly omitted any requested information. I understand that if I misrepresent, falsify or omit information requested on this application, in my interview(s) or during the pre-employment evaluation, I may not receive an employment offer, or, if I have been hired, I may be dismissed from employment.

I authorize Pinkerton and its agents to request any information and records concerning me, including but not limited to consumer credit, criminal history, driving, employment, military, civil and educational data and reports, from any present or previous employers (unless expressly stated), consumer reporting agencies, licensing and law enforcement agencies, courts and other entities. Further, if I become employed by Pinkerton, I agree to submit to employment-related medical examinations, when reasonable and necessary, at the request of Pinkerton.

I authorize and request any present or former employer, school, financial institution, credit agency or any governmental agency or persons having personal knowledge about me to furnish Pinkerton or its agent with any and all such information, which may be related to my employment, or continued employment, with Pinkerton. I agree that a photocopy of this authorization may be accepted with the same authority as the original and shall be valid for this or any future reports or updates that may be requested.

I understand that any offer of employment will be conditioned on Pinkerton's receipt of satisfactory responses to reference requests, the provision of satisfactory proof of my identity and legal right to work in the United States, the satisfactory completion of a drug/alcohol screening and other bona fide pre-employment testing.

If hired, I agree and understand that I will conform with the policies, practices and procedures of Pinkerton. I further agree that my employment is at-will. This means that either Pinkerton or I may terminate the employment relationship at any time, with or without notice, and with or without cause. I understand that Pinkerton retains the right to establish compensation, benefits and working conditions for all of its employees. Accordingly, I understand and agree that Pinkerton retains the sole right to modify my compensation and benefits, position, duties, and other terms and conditions of employment, including the right to impose discipline of whatever type and for whatever reasons Pinkerton, at its sole discretion, determines to be appropriate. No employee or representative of Pinkerton, other than the President of Pinkerton USA, has the authority to alter the at-will nature of my employment relationship, or make any agreement inconsistent to the foregoing.

I acknowledge that I have been given the opportunity to ask questions regarding Pinkerton's policies and procedures, and my potential status as an employee at-will, and no Pinkerton representative has promised or implied to me that if I am hired, I will be employed under any terms other than stated above. I agree that this constitutes an integrated, binding agreement with respect to the at-will nature of my employment relationship.

**PINKERTON AND ITS EMPLOYEES ARE SUBJECT TO A MANDATORY ARBITRATION PROGRAM TO THE EXTENT ALLOWED BY LAW**

Signature of Applicant _____        Date  11-27-00

### PLEASE DO NOT WRITE BELOW THIS LINE

#### - For Office Use Only -

| | |
|---|---|
| Position Offered?  ☑ YES  ☐ NO | Hired?  ☐ YES  ☐ NO |
| If yes, DOH: | Post / Site: | Rate of Pay: | If No, AAP Code: |
| Interviewer  Rusi Mezvine | Signature | Date 11/29/11 |

3

**EXHIBIT  B**



# TABLE OF CONTENTS

Section I    –   Questions and Answers .................................................................4-7

Section III  –  Responsibilities ..........................................................................11

Section V    –  Arbitration Fees and Costs ...........................................................14

Section VII  –  Consideration .............................................................................16

TABLE

OF

CONTENTS

1

**ARBITRATION PROGRAM**

2

# PINKERTON'S ARBITRATION PROGRAM

In January 1998 Pinkerton introduced its Arbitration Program. The program was designed to provide a fast, fair and inexpensive means of resolving disputes between Pinkerton and its associates by way of impartial binding arbitration. Since that time, associates have used the program to obtain an unbiased review of claims without the need to resort to the more costly and time-consuming court system.

For many kinds of disputes the court system simply does not work. It can take as long as five years (or more) to take a case from beginning to end. Only lawyers profit from these delays. Pinkerton's program gives associates the mechanism to have disputes heard and resolved almost immediately by an experienced, neutral arbitrator.

Our hope is that Pinkerton will not have disputes with its associates. Pinkerton's managers and human resources staff are trained in employee relations matters. The goal and practice of the company is to treat associates fairly, respectfully and within the law. Pinkerton managers will always try to resolve disputes prior to going to arbitration. However, we recognize that differences still may arise during or following your employment with the Company.



**PINKERTON'S ARBITRATION PROGRAM**

Arbitration is not intended to replace any internal dispute resolution mechanisms Pinkerton has now or may institute in the future, including informal complaints to your supervisors, managers, local human resources personnel, or other Company representatives. In fact, it is the Company's hope that most issues can be resolved through this open-door policy and process or through Pinkerton's confidential AlertLine®, 1-800-93-ALERT.

Since its inception in 1998, the program has successfully handled many matters. In 1999 the Arbitration Program was changed in two ways. First, Pinkerton now pays for all of the costs and fees of the arbitration administration. Second, the only limits on discovery are those imposed according to the applicable state or federal law. Both of these changes are described in the program. Experience tells us that even in the best-run companies disputes sometimes do arise that are not easily resolved. This program is designed to provide an efficient and swift method of resolving these disputes.

*Thank you for your support.*

ARBITRATION PROGRAM

3

SECTION I

4

**Q & A**

**Q: Why does Pinkerton** ........... **itration program?**

**A:** Arbitration resolves disputes fast........... er than the court system, while not losing or sacrificing any legal ....... its. Arbitr....ion is mutually beneficial to the Company and its associates.

**Q:  Do I lose any substantive rights under this program?**

**A:**  No, your substantive legal rights remain intact and, in fact, the same laws apply. All that changes is that an arbitrator rather than a judge or jury will resolve disputes.

**Q:  What kinds of claims does the agreement cover?**

**A:**  All legal claims of any kind, except as specified in Section II of this brochure.

**Q:  Does this mean that if I have a dispute with the Company over a matter unrelated to my employment, my claim over that will be arbitrated?**

**A:**  Yes, the agreement covers claims that are unrelated to your employment.

**Q:  Is Pinkerton also bound by these arbitration procedures?**

**A:**  Yes, this means that if Pinkerton has any claims against its associates, or ex-associates, it must also use binding arbitration under the same terms and conditions described in Section II of this brochure.

**Q & A**

**Q:** What [...] want to be covered by this program?

**A:** All associates up to and including the President, are covered by the program. By being employed at Pinkerton, all associates agree to be covered by the program and waive the right to use the court system.

**Q: Who are the arbitrators who would decide cases?**

**A:** They are arbitrators assigned by the American Arbitration Association, which is the leading arbitration organization in the United States. The arbitrators are all experienced professionals who resolve disputes on a substantially full-time basis. Most of the arbitrators are retired judges. Both you and Pinkerton together will choose the arbitrator from a list provided by the American Arbitration Association.

**Q: Do I have to hire an attorney to go to arbitration?**

**A:** No, although you may do so if you wish.

**Q: Can an arbitrator award the same kind of damages that a court or jury could?**

**A:** Absolutely. The law and remedies will be exactly the same as they would be in court.

**Q: Will Pinkerton use attorneys to defend arbitrations?**

**A:** It will depend on the case. However, one of the advantages to Pinkerton of this system is that we expect to reduce the amount of money we spend on attorneys. If the associate does not have an attorney, Pinkerton will be less likely to have one at the arbitration.

SECTION I

5

**SECTION I**

*Q* & *A*

**Q:** *Will I have the* ~~...~~ *y to take deposi-tions and engage in* ~~...~~ *ery?*

**A:** Yes, every party will have the right to ~~...~~ deposition and obtain documents as if the case were in the courtroom.

**Q:** *Can arbitration decisions be appealed?*

**A:** Only on limited grounds. Otherwise, the arbitration decision normally is final and binding.

**Q:** *This sounds like a union arrangement; does it have anything to do with unionization?*

**A:** No, this is a system of arbitration without need for a union.

**Q:** *Can cases still be settled?*

**A:** Yes, the same as in a court lawsuit.

**Q:** *Are the arbitrators on Pinkerton's payroll?*

**A:** Absolutely not. They are objective, unbiased third parties, chosen by both Pinkerton and the individual concerned.

**Q:** *Who pays for the arbitrator's fees and administrative costs of the arbitration?*

**A:** Pinkerton.

6



*Q:* **Why** ...**ton pay for the arbitrator's fees** and ... ...**tive costs?**

*A:* Pinkerton ... the costs because Pinkerton does not want any obstacle to ...e asso... ...'s right to pursue arbitration.

*Q:* *How do I initiate the arbitration process and whom should I contact if I have more questions?*

*A:* Direct any questions or concerns to Pinkerton's local human resources personnel, or U.S. Security Corporate Employee Relations department, AlertLine®, Pinkerton's Legal department or your manager.

*Q:* *May I still file a charge with a state administrative agency or the Equal Employment Opportunity Commission (EEOC)?*

*A:* Yes, the Pinkerton arbitration process does not limit associates from using state or federal administrative processes. If an associate goes through the EEOC or similar state administrative process, that does not mean the claim will ultimately be resolved in a court. If the matter is not resolved through the administrative process, the associate still proceeds through arbitration. By going through an administrative process the associate adds an extra and arguably lengthy step to the resolution of the dispute.



## TERMS AND CONDITIONS OF PINKERTON'S ARBITRATION PROGRAM

**SECTION II**

**8**

Pinkerton's Arbitration Program does not replace other internal dispute resolution mechanisms. The Company still recommends using supervisors, managers, local human resources personnel or other Company representatives, or the use of AlertLine®, to resove issues in the early stages.

Any references in this program to Pinkerton or to the Company will be a reference also to all Pinkerton subsidiaries and affiliated entities, all benefit plans, the benefit plans' sponsors, fiduciaries, administrators, affiliates, and all successors and assigns of any of the aforementioned. This arbitration program does not apply to Employee Retirement Income Security Act (ERISA) plans, which have their own claims resolution programs.

## CLAIMS COVERED BY THE PROGRAM

Any claims or controversies ("Claims") either Pinkerton may have against an associate or an associate may have against the Company or against its officers, directors, associates or agents in their capacity as such, must be resolved by arbitration instead of the courts, whether or not such claims arise out of an associate's employment (or its termination). The claims covered include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for harassment, discrimination (including, but not limited to race, sex, religion, national origin, age, marital status, or medical condition, handicap or disability); claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one); and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded in the following paragraph. This provision includes, but is not limited to, Title VII, Civil Rights Act of 1964; the Age Discrimination in Employment Act; the Americans with Disabilities Act, the Family Medical Leave Act and the Fair Labor Standards Act, and comparable state statutes.

## CLAIMS NOT COVERED BY THE PROGRAM

Associates may have claims for workers' compensation or unemployment compensation benefits that are not covered by this program. These claims are still filed by the associate with the relevant state administrative agency.

### Required Notice of All Claims and Statute of Limitations

The aggrieved party must give written notice of any claim to the other party within the statutory period mandated by the relevant state or federal law.

The written notice shall identify and describe the nature of all claims asserted and the facts upon which such claims are based. The notice shall be sent to Pinkerton at 4330 Park Terrace Drive, Westlake Village, CA 91361, Attn: Legal Department. If Pinkerton is the party bringing the claim, Pinkerton shall send the notice to the individual's most recent address in his/her personnel file.

...ONSIBILITIES

...be represented by an attorney
...representative selected by the party.

### Discovery

Each party shall have the right to take depositions, make requests for production of documents and send interrogatories to any party and conduct discovery according to the applicable law.

### Designation of Witnesses

The parties may introduce witnesses, including any expert witness, and copies of all exhibits intended to be used at the arbitration. The arbitrator assigned to the matter will usually set forth a schedule, similar to the court system, whereby the parties exchange information such as witness and exhibit lists.

### Subpoenas

Each party shall have the right to subpoena witnesses and documents for the arbitration.

SECTION III

11

# ARBITRATION PROCE...SS

Except as otherwise provided in this brochure, any arbitration shall be in accordance with the current Model Employment Arbitration Procedures of the American Arbitration Association (AAA). The arbitrator shall be either a retired judge or an attorney licensed to practice law in the state in which the arbitration is convened (the Arbitrator). The arbitration shall take place in or near the city in which the associate is or was employed by the Company.

The Arbitrator shall be selected as follows. The AAA shall give each party a list of arbitrators drawn from its panel of labor-management dispute arbitrators. Each party may strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, that individual shall be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternately until only one remains. The party who did not initiate the claim shall strike first. If no common name remains on the lists of all parties, the AAA shall furnish an additional list or lists until an Arbitrator is selected.

The Arbitrator shall apply the substantive law (and the law or remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or remedies. The Federal Rules of Evidence

## ...CATION PROCEDURES

shall apply. The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable. The arbitration shall be final and binding upon the parties, except as provided in this program.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems necessary. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure. Either party, at its expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings. Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and opinion in the form typically rendered in labor arbitrations. The arbitrator's decision will be binding and final.

**SECTION V**

## ARBITRATION FEES AND COSTS

Pinkerton shall pay the fees and costs of the Arbitrator and the AAA, unless prohibited by the jurisdiction in which the associate lives or was last employed by Pinkerton, in which case Pinkerton and the associate shall share the costs. In the event the fees and costs are shared, each party will deposit funds or post other appropriate security for its share of the Arbitrator's fee, in an amount and manner determined by the Arbitrator, 10 days before the first day of hearing. Each party shall pay for its own costs and attorneys' fees and discovery (such as depositions), if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party, in accordance with such statute or agreement.

14

# JUDICIAL REVIEW

Either party may bring an action in any court of competent jurisdiction to compel the arbitration award. A party opposing enforcement of an award may not do so in an enforcement proceeding, but must bring a separate action in any court of competent jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury. The judge does not re-assess the credibility of the witnesses or the evidence.

### Interstate Commerce

Pinkerton is nationally based and is engaged in transactions involving interstate commerce. Your duties, as an associate of the Company, affect commerce.

## CONSIDERATION

**Section VII**

**16**

The mutual promises by the Company and by you to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other. By remaining employed with Pinkerton you are agreeing to waive your right to have a claim against the Company heard in a court of law.

### Not an Employment Agreement

This program is not a contract of employment, express or implied. This program does not alter the "at-will" status of your employment. Pinkerton is an "at-will" employer, and all employees are employed on an "at-will" basis.



**EXHIBIT  C**



Akerman Senterfitt
ATTORNEYS AT LAW

Boca Raton
Fort Lauderdale
Jacksonville
Miami
Orlando
Tallahassee
Tampa
West Palm Beach

One Southeast Third Avenue
28th Floor
Miami, Florida 33131-1714
www.akerman.com
305 374 5600 *tel*   305 374 5095 *fax*

July 22, 2003

**VIA TELEFAX AND MAIL**

Beth M. Gordon, Esq.
Parrillo, Weiss & O'Halloran
2101 N.W. Corporate Boulevard, Suite 104
Boca Raton, Florida  33312

Re:   **Douzable v. AutoNation**, Case No. 02-61709-CIV-Marra (S.D. Fla.)

Dear Beth:

Following our phone conversation yesterday, I submitted the following documents to the district court:  (1) an unopposed motion for a 30-day enlargement of time for defendant Pinkerton's to respond to the Amended Complaint; and (2) a notice of my appearance as co-counsel for defendant AutoNation.

Pursuant to your request, I have enclosed a copy of your client's signed Acknowledgement form, dated December 2000, stating that he had received the Pinkerton handbook, including the arbitration program materials, and that he agreed to be bound by these provisions.  It is my understanding that Pinkerton's in-house counsel Annette Barber already provided you with a copy of the arbitration program materials.

Based on these materials, Defendants demand that plaintiff Douzable submit this dispute to binding arbitration.  Please let me know if your client agrees to arbitrate his claim.  If not, Defendants will file a motion to compel arbitration.

Sincerely,

Nancy A. Copperthwaite

Enclosure

cc:   Richard A. Ivers (w/encl.)(via fax)

{MI958617;1}